UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

YASSIN MUSTAFA, INC.,
a Minnesota Corporation d/b/a
FAMILY FOODS, and
YASSIN M. MUSTAFA,
an Individual,

   Plaintiff(s)

v.

UNITED STATES OF AMERICA,

   Defendant(s)

Case No.: 0:22-cv-00738-KMM-JFD

DEMAND FOR JURY TRIAL:

YES ☐  NO ☒

## AMENDED COMPLAINT

The Plaintiffs, YASSIN MUSTAFA, INC., a Minnesota Corporation d/b/a FAMILY FOODS, and YASSIN M. MUSTAFA, an Individual, by and through their undersigned counsel and hereby file this Amended Complaint against the UNITED STATES OF AMERICA upon the grounds set forth herein, and in support thereof, states as follows:

### FACTUAL BACKGROUND

1. The Plaintiffs owns and operates a retail store in Minneapolis, Minnesota, named YASSIN MUSTAFA, INC., a Minnesota Corporation d/b/a FAMILY FOODS (hereinafter referred to as "Family Foods"). The store is comprised of a commercial storefront dedicated to retail sales of retail food market, focusing mostly on groceries to the Plaintiffs' customers.

2. Located in Minnesota's 5th Congressional District, Family Foods serves a community where approximately 10% of households receive Supplemental Nutrition Assistance

1

Program benefits[1] ("SNAP"), formerly known as Food Stamps, which is overseen by the Food & Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA"). Of said households, 48.6% are below the poverty level, 35.7% of said households are with one or more people 60 years of age and over, 46.2% of said households are with child(ren) under the age of 18 years, and 49.7% of said households are with disabled individual(s).

3. Accordingly, Family Foods began accepting Electronic Benefit Transfers (or "EBT") to better serve the local community and increase its attractiveness to SNAP customers. These SNAP customers eventually became a substantial share of the store's total clientele, responsible for a substantial portion of the store's gross revenue on EBT alone. In addition to EBT, the SNAP clientele account for an even larger portion of the gross revenue as they conduct significant non-SNAP transactions as well for ineligible items.

4. On September 29, 2021 the USDA, through the FNS, sent the Plaintiffs a Charge Letter pursuant to 7 C.F.R. §278.6, alleging that the store engaged in Trafficking of SNAP benefits (defined by 7 C.F.R. §271.2).

5. In support thereof, the Defendant claimed that a number of transactions conducted at the store appeared to be violative based upon statistical data analysis.

6. The transactions listed by the Defendant in the Charge Letter occurred between February 2021 and July 2021– a period of time which is referred to as the "Review Period."

7. On October 13, 2021, the Plaintiffs were permanently disqualified from SNAP.

8. As a result, the store lost a considerable portion of its gross revenue (including revenue derived from SNAP) and a substantial portion of its clientele.

---

[1] See USDA Publication of December 2020, Profile of SNAP Households: Minnesota Congressional District 5.

9. Subsequently, the Plaintiffs filed an Administrative Review as permitted by 7 C.F.R. §279, and presented arguments and evidence in support of their position. The Plaintiffs took issue not only with the disqualification process and the inaccuracy of the evidence against them, but also with the comparative lack of direct evidence that any violations of SNAP retailer policies had occurred.

10. The Administrative Review Branch of the FNS responded to the Plaintiffs' appeal in a letter and opinion entitled Final Agency Decision, dated February 22, 2022, which was received on the same date, and attached hereto as **Exhibit "A"**. The Plaintiffs' administrative appeal was denied.

11. This Judicial Appeal has been filed timely, to seek the reversal of the USDA's current decision to permanently disqualify the Plaintiffs from participating as a SNAP retailer.

## JURISDICTION AND VENUE

12. The Plaintiffs bring this action based upon their disqualification from eligibility to participate in the Supplemental Nutrition Assistance Program, as codified by Congress in 7 U.S.C. §§ 2011 – 2036(c).

13. This Court has subject matter jurisdiction over the matters raised by the Plaintiffs in this case pursuant to 7 U.S.C. §2023(17), and 7 C.F.R. §279.7. Furthermore, 28 U.S.C. §1331 gives this Court original jurisdiction over civil actions arising under the laws of the United States, for which the aforementioned statute and regulation qualify.

14. Venue is appropriate in this District pursuant to 7 C.F.R.§279.7(a), 7 U.S.C. §2023(13) and 28 U.S.C. §1391(b) as Plaintiffs' business was owned and operated in Minneapolis, Minnesota, and because the facts giving rise the circumstances herein occurred in the District of Minnesota.

**PARTIES**

15. The Plaintiff, YASSIN MUSTAFA, INC., a Minnesota Corporation d/b/a FAMILY FOODS, operates at 3469 Minnehaha Avenue, Minneapolis, Minnesota 55406-2624. Yassin Mustafa, Inc., a Minnesota Corporation d/b/a Family Foods is referred to herein collectively with the other Plaintiffs as "Plaintiffs".

16. The Plaintiff, YASSIN M. MUSTAFA, an individual, is a natural person, and the registered owner of Family Foods, and is referred to herein collectively with the other Plaintiffs as "Plaintiffs".

17. The Defendant, the UNITED STATES OF AMERICA, acting through its agency, the United States Department of Agriculture (hereinafter referred to as the "USDA" or "Department"), and its subservice, the Food and Nutrition Service. The Defendant may be referred to herein as "the Government" or "the Department".

**GENERAL ALLEGATIONS**

18. SNAP is a government program operated pursuant to Title 7 United States Code, Chapter 51, and codified more specifically as 7 U.S.C. §§2011-2036(c).

19. The general purpose of SNAP is to provide food benefits (formerly "food stamps") to program participants who meet certain financial need requirements. SNAP participants are awarded benefits (money) issued on a state-by-state basis in varying amounts based upon the needs of their household. These benefits are transmitted to, and utilized by the participant, through an Electronic Benefits Transfer (EBT) card, which conceptually functions similar to a debit card.

20. The benefits are to be used by the participant only for the purchase of food and other eligible items sold by approved SNAP retailer, such as Family Foods.

21. In turn, SNAP retailers are governed by the Defendant through 7 C.F.R. §278.6

which in pertinent part permits the disqualification or suspension of retailers who violate SNAP regulations.

22. Significantly, SNAP violations on the part of retailers typically occur in two areas: (1) the sale of ineligible items to SNAP participants (using their EBT benefits), and (2) trafficking in SNAP benefits.

23. The term "trafficking" is defined at length by 7 C.F.R. §271.2, which states in pertinent part that trafficking is:

> "(1) The buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone;
> (2) The exchange of firearms, ammunition, explosives, or controlled substances, as defined in section 802 of title 21, United States Code, for SNAP benefits;
> (3) Purchasing a product with SNAP benefits that has a container requiring a return deposit with the intent of obtaining cash by discarding the product and returning the container for the deposit amount, intentionally discarding the product, and intentionally returning the container for the deposit amount;
> (4) Purchasing a product with SNAP benefits with the intent of obtaining cash or consideration other than eligible food by reselling the product, and subsequently intentionally reselling the product purchased with SNAP benefits in exchange for cash or consideration other than eligible food; or
> (5) Intentionally purchasing products originally purchased with SNAP benefits in exchange for cash or consideration other than eligible food;
> (6) Attempting to buy, sell, steal, or otherwise affect an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signatures, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone."

See 7 C.F.R. §271.2 (2016)

24. While most of 7 C.F.R. §278.6 sets forth a graduated scale for punishment of SNAP retailers for the sale of ineligible items, trafficking is treated more harshly. Specifically, if a retailer is found to be trafficking in SNAP benefits, it (more specifically, the individual(s) who applied for SNAP participation) is permanently disqualified from participation in the program, and may be issued a Transfer of Ownership Civil Money Penalty (CMP) of $11,000.00 per violation. FNS also adds the retailer and its owner(s) and officer(s) to the federal database list of disqualified persons without notice or opportunity to appeal or be heard.

25. In this matter the government maintains that there were four (4) violations.

26. The Transfer CMP itself is not immediately assessed against the retailer, but instead assessed at the time the retail store is sold (regardless of the period of time intervening between the permanent disqualification and the sale).

27. Such are the circumstances of this case. The Plaintiffs have been permanently disqualified by the Defendant, resulting in damage to the Plaintiffs and a potential future fine.

### **ERRORS & OMISSIONS ON THE PART OF THE DEFENDANT**

28. In the instant case, the Plaintiffs did not engage in trafficking in SNAP benefits and have defended against the allegations accordingly.

29. The Defendant lacks any direct evidence (eye-witness accounts, receipts, or the like) that trafficking occurred.

30. Instead, the Defendant based its disqualification upon data analysis, which is circumstantial by definition: evidence from which more than one logical conclusion can be reached.[2]

---

[2] This reference is drawn from *Chief Counsel Advisory*, IRS CCA 200912021, though it is perhaps the best succinct definition of the term.

31.   This type of evidence leaves considerable room for misinterpretation of the data and erroneous conclusions surrounding the nature of transactions.

32.   In the instant case, the USDA's analysis of the data *intentionally* precluded alternative explanations for the presence of the transactions, and instead opted for a biased and statistically unsound analysis designed solely to result in a disqualification of the store.

33.   Furthermore, the USDA violated its own operating procedures in evaluating the Plaintiffs' case.

34.   Each of the transactions set forth in the Charge Letter were categorized and selected by the Defendant's ALERT System computer program, which identifies specific transaction types, including four of which are addressed herein:

   a. "Large number of transactions ending in a same cents value";

   b. "Large number of transactions in repeated dollar values";

   c. "Multiple transactions were made from the accounts of individual households within a set time period"; and

   d. "EBT transactions that are large based on the observed store characteristics and recorded food stock".

35.   The Department does not have any statistical studies, data analysis, or supporting evidence to show that either of those categories to the SNAP violation of "trafficking." In fact, the Defendants' Rule 30(b)(6) witness on the ALERT system's purpose and capabilities, Mr. Douglas Wilson, has previously testified on multiple occasions that those transaction categories are merely suspicious, and not in-and-of-themselves, indicative of trafficking.[3]

---

[3] Mr. Wilson's Deposition transcripts are the result of other Judicial SNAP reviews pertaining to trafficking and data analysis. The Plaintiffs will separately produce them to the Defendant, and

36. The Department has never conducted a study to determine the correlation coefficient of the statistical connection between trafficking and the alleged violative transaction categories.

37. Mr. Wilson, as the Government's Rule 30(b)(6) witness with the most knowledge of the ALERT system, acknowledged other such statistical-analysis shortcomings by indicating that the categories and transactions cannot distinguish between different SNAP violation types (such as trafficking, issuance of credit, and sale of ineligible items).

38. Ultimately, there is no statistically meaningful correlation between the two transaction categories utilized by the Defendant and the act of "trafficking."

39. Despite this, cases using the ALERT system's categories are referred to FNS' Investigative Analysis Branch (IAB) for investigation and prosecution.

40. This instant matter was just such a case, referred to IAB Section Chief Ms. Sanela Ocanovic's division for evaluation and prosecution. Ms. Ocanovic was the Section Chief that issued the permanent disqualification in this case.

41. This process is not an impartial one, nor is it unbiased. As a rule, every single case referred to the IAB for data analysis is charged with trafficking in SNAP benefits.

42. Of the thousands of cases handled every year, the IAB makes a finding of trafficking in nearly all (between 95% and 100% depending upon the section) of the cases. There is no impartiality in this process. It is an assembly line.

43. The Defendant, in this case did little in way of investigation to support its position that trafficking was more likely than not the cause of trafficking. Keeping in mind that the

---

present as necessary to this Court. However, attachment to this Complaint would be unnecessary and redundant.

Plaintiffs never saw the unredacted Administrative Record prior to filing this suit (this is not an exhaustive list of the failures on the party of the Defendant's data analysis):

    a. The Defendant did not interview the households engaged in the transactions, despite having the ability to do so;

    b. The Defendant continued to rely upon data comparison with other stores that differ materially in business, inventory, clientele and circumstances; and

    c. The Defendant did not conduct any research on household shopping and spending habits, specifically with the effect on participants' store loyalty, item selection, purchase transaction frequency and transaction sizes.

44. At the initial stages of the Administrative Decision, it is the Government's burden to prove by a preponderance of the evidence that it is more likely than not that trafficking had occurred.[4]

45. The Government did not (and does not) have sufficient evidence to meet that burden, or to link the transactions to trafficking.

46. For purposes of a judicial review, the burden does switch to the Plaintiff and for purposes of this matter, the Plaintiff bears the burden of proof.

### PLAINTIFFS' ALLEGATIONS

47. The Plaintiffs do not have access to the Administrative Record.  At no point in this process have the Plaintiffs been given access to the pertinent records (aside from the Charge Letter, Initial Disqualification Letter, and Final Agency Decision) relied upon by the Department in its analysis.

48. Furthermore, there have been no decisions made by Administrative Law Judges,

---

[4] On Judicial Appeal, the burden rests with the Plaintiffs.

Department Attorneys or other legal-trained individuals who could adequately weigh the evidence before the Department during the administrative process to date.

49. What little Due Process actually exists in these cases is borne out only here at the Judicial Review stage of the case.

50. The Plaintiff's transactions were bonafide purchases of food items, in exchange for SNAP benefits as the system was intended.

51. The shopping habits of SNAP participants in the store are consistent with the transactions listed, and the Plaintiffs anticipate such testimony from these households.

52. The Plaintiffs' explanations for the transaction categories, as set forth in their response to the USDA-FNS in their Administrative Brief, are consistent with the actual shopping habits and trends that occur in the store.

53. In any case, the Store was not engaged in trafficking SNAP benefits either during the Review Period or at any other time.

## COUNT I: REQUEST FOR JUDICIAL REVIEW

54. The Plaintiffs incorporate and restate each and every paragraph set forth above as though more fully set forth herein.

55. The Plaintiffs, pursuant to 7 U.S.C. §2023 and 7 C.F.R. §279.7 have the right to, and hereby do request a *de novo* judicial review of the permanent disqualification issued by the Defendant.

56. The Plaintiffs maintain that they did not traffick in SNAP benefits and ask that the Court conduct a trial on the merits of the matter, permitting the parties to present testimony and submit evidence in support of their positions.

57. The transaction categories cited by the Defendant are the result of the Plaintiffs' regular business practices, inventory, location and the SNAP participants' shopping preferences.

58. The Defendant failed to adequately account for the shopping habits of the store's SNAP clientele.

59. The Defendant failed to adequately identify appropriate SNAP retailers for statistical and transactional comparison purposes.

60. Such failures referenced above materially impacted the Government's analysis, and led to the errant conclusion that trafficking was occurring.

61. Furthermore, the Plaintiffs qualified for the issuance of a Civil Money Penalty, but their request was errantly denied by the Defendant.

62. The Defendant's decisions to both disqualify the store and deny the issuance of a civil money penalty were both invalid and inaccurate for those reasons set forth above, as well as such further reasons as may be uncovered during the discovery phase of this matter.

63. Accordingly, the permanent disqualification of the Plaintiffs should be reversed, and the Plaintiffs should be removed from the disqualified persons/store lists maintained within the Department

64. Furthermore, to the extent that the Plaintiffs incur attorneys' fees and court costs in conjunction with this Judicial Appeal, the Defendant should be made to pay such fees and costs.

WHEREFORE, the Plaintiffs, YASSIN MUSTAFA, INC., a Minnesota Corporation d/b/a FAMILY FOODS, and YASSIN M. MUSTAFA, an Individual, respectfully ask this Court to conduct a *de novo* review of this matter, conduct a trial upon the merits of the Plaintiffs' case, and enter Judgment reversing the permanent disqualification, as well as awarding the Plaintiffs any attorney's fees and court costs they may incur in this matter.

Dated:  July 6, 2022                  Respectfully submitted,

/s/ Andrew Z. Tapp
Andrew Z. Tapp, Esquire
Pro Hac Vice
Florida Bar Number:  68002
Metropolitan Law Group, PLLC
1971 W. Lumsden Road, #326
Brandon, Florida 33511-8820
Telephone:     (813) 228-0658
Fax:              (813) 330-3129
Email: Andrew@Metropolitan.legal

and

Miluska L. Novota
Reg. 0392904
720 West Lake Street, No. 412
Minneapolis, MN 55408
mnovota@hortensialaw.com
(612) 246-5016
Fax:  (612) 435-9700

**COUNSEL FOR PLAINTIFFS**

12